GEORGE W. SWEPSON and RUFUS Y. McADEN *v.* JOSHUA
ROUSE and wife.

A vendor, who has contracted to sell his land, is in equity a trustee for
the purchaser, but if he has not received the whole of the purchase
money, he is not a mere naked trustee, and upon becoming a bank-
rupt, his interest in the land will, by proper assignments, pass to the
assignee in bankruptcy under the 14th section of the Bankrupt Act.

To a bill for a specific performance of a contract to convey land, the as-
signee of the vendor, who has not received the whole of the purchase
money and who has become bankrupt, must be made a party.

Where a defendant to a bill for the specific performance of a contract to
convey land, alleges and relies upon his certificate of discharge as a
bankrupt, the fact of a proper assignment of his estate to his assignee
will be presumed though it is not specifically alleged, where there is
no allegation or proof to the contrary.

When a bill is filed for the specific performance of a contract to convey
a tract of land, and the defendant alleges that the tract consists of two
parts, of which he admits that he is the owner of one, but avers that
the other belongs to his wife, and sets up a defence, which if good,
applies to the whole contract, it is erroneous to make a decree in favor
of the plaintiff as to the part of which the defendant admits he is the
owner, and to reserve the question as to the other part.

This was a bill filed by the plaintiffs in the Court of Equi-
ty for the County of ALAMANCE in 1864 against the de-
fendants, Joshua Rouse and his wife, for the specific per-
formance of the following contract in writing:

"Know all men by these presents that I acknowledge my-
self indebted to George W. Swepson and Rufus Y. McAden,
of Alamance County, State of North Carolina, in the sum of
thirty thousand dollars, for the payment of which I bind my
heirs and assigns. The conditions of the above obligation
are such that whereas I have this day sold to G. W. Swep-
son and R. Y. McAden the tract of land on which I live,
containing five hundred and fifty acres, more or less, adjoin-
ing the lands of Wm. L. Phillips, the heirs of Lewis Whit-
field and others, for which land the said Swepson and Mc-

Aden have this day paid me seven thousand five hundred dollars, and are to pay in Confederate Treasury notes seven thousand five hundred dollars, when the conditions of this bond are complied with, which conditions are that as soon as possible I am to execute to them jointly with my wife a lawful title in fee simple, with all necessary forms of deed, &c., to the land above described with the appurtenances thereto belonging, then this obligation to be void, otherwise to remain in full force and effect. This 13th August, 1863.

JOSHUA ROUSE, [SEAL."]

TESTE: F. W. FIELDS.

At the Spring Term, 1867, the defendant, Joshua Rouse, filed a separate answer, in which he admitted that he had executed the obligation set forth in the bill, but alleged that it had been obtained from him by imposition and false representations of one of the plaintiffs. He stated in one part of his answer that he owned only one-half of the tract of land in controversy, the other half belonging to his wife; and in another part, he said that a road passed through the tract of land, and that all on one side of the road belonged to him and the other to his wife, without stating that the parts were of equal value, or in what proportion the value of one stood to the other. He stated further that his wife refused to join in a conveyance of her part of the land.

After the adoption of the new constitution and the consequent change in the judiciary system of the State, the case was transferred to the Superior Court of the County of Alamance, and at the Spring Term, 1869, the defendant filed a supplemental answer in which he alleged that he had become a bankrupt, and had obtained a certificate of discharge in bankruptcy, a copy of which he filed as an exhibit. No allegation was made that a deed of assignment had been executed to his assignee.

At the Fall Term, 1870, the cause came on to be heard before his Honor *Tourgee, J.,* when a decree was made

"that the defendant, Joshua Rouse, as soon as practicable after notice of this decree, shall execute and deliver to the plaintiffs, a proper title conveying to them jointly in fee simple, the one-half of said tract of land, with covenants of warranty of title and quiet enjoyment, of which he admits in his answer that he is the owner in fee simple, under penalty of a contempt of this Court. And of the other moiety of the said tract of land of which defendant denies title in himself and alleges the same to be in his wife (as to which fact no proof has been offered in the cause,) the Court doth order that the clerk of this Court, after notice to the parties, make enquiry and report to this Court at its next ensuing term, in whom the title of the said land may be, to the end that further directions may be moved for in this cause."

From this decree the defendants prayed for and obtained an appeal to the Supreme Court.

*Howard* and *Dillard & Gilmer*, for the defendants.
*W. A. Graham*, for the plaintiff.

RODMAN, J. The defendant, Joshua Rouse, by his supplemental answer alleges his discharge as a bankrupt subsequent to the commencement of this suit. Can the Court proceed to hear and decide the case in the absence of the assignee? It is a general rule in equity that all persons having an interest in the subject of the suit should be parties to it. Has not the assignee an interest in this case which must necessarily be passed on by any decree? Against the view that he has such an interest it is said that the Bankrupt Act (S. 14,) provides that where the bankrupt is a trustee his estate shall not pass to the assignee; and that in a Court of equity a vendor who has contracted to convey land is a trustee for the vendee. Admitting the latter part of the proposition as generally true, we think that the trustee meant in that section of the Act, can only be a mere naked

trustee, who holds the legal title but has no beneficial interest in the subject of the trust. It seems to us that, upon the plaintiff's bill and assuming his rights to be such as he conceives them, Rouse is not a mere naked trustee. Assuming that he owned the entire tract which he agreed to convey; yet he could not be required to complete his contract except on the payment by the plaintiff's of the unpaid residue of the purchase money, (whatever the proper amount might be—a question not pertinent at present.) To secure this residue Rouse had a lein on the land, which was an assignable interest upon his bankruptcy, and necessarily passed to his assignee. If the Court were of opinion with the plaintiff on the merits of the case, and this residue were paid into Court, it would be necessary to make some disposition of it, and to whom could the Court decree that it should be paid? not to the bankrupt of course, and not to the assignee, because he is no party, and may have sold the interest. Assuming the plaintiff's right to the principal relief which he seeks, it seems to us that it is impossible for the Court to decide the matters in controversy in the absence of the assignee. The amount of the unpaid residue of the purchase money is a matter in controversy, and we could not bind the assignee by any decree made in his absence.

But it is said that the plaintiff does not at present claim a conveyance of the whole land covered by the contract, but only of that part to which Rouse by his answer admits that he had a title. We think in this view the same reasons for the presence of the assignee would be applicable. The defendant in his answer says that the land which he agreed to convey as a single tract, was in fact two tracts, one of which belonged to himself, and the other to his wife. It is true, that in one part of his answer, he speaks of his wife's owning half the land; but in another part of it he distinctly states, that a road runs through the land, and that he owned

the portion on one side of the road and she the portion on the other side. It nowhere appears that these two portions are of equal value; and it is certainly possible that when upon the final hearing of the case, it becomes necessary to adjust the compensation or deduction from the agreed price which Rouse is to make by reason of his inability to convey a part of the land agreed to be conveyed; it may be found that the plaintiff ought to pay Rouse something beyond the payment which he actually made, and this sum would go to the assignee.

2. It is also said that the Bankrupt act requires a written assignment from the Register to the assignee in order to pass the bankrupts title, and that no such assignment is alleged in the supplemental plea. As this assignment is required to be made in all cases as a matter of course, we think the maxim that in Courts of general jurisdiction " *omnia presumuntur rite esse acta,*" will apply; and that at least in the absence of any allegation or proof to the contrary, and in the present stage of the case, we must assume such an assignment to have been made.

For these reasons the case would be sent back to the Court below in order that the plaintiff by a supplemental bill might make the proper parties.

But besides that, and apart also from what may be considered the main questions, we think there are fatal objections to the decree. The Judge assumes (for the purpose of the decree) the fact alleged in the answer, that the defendant owned a part of the land, which he seems also to consider to be an exact moiety in value, (for which supposition we can not find any ground in the pleadings) and undertakes to decree a conveyance of this moiety, leaving the question as to the plaintiff's right to a conveyance of the other moiety to be afterwards passed on. We think this method of dealing with a case by piece-meal, irregular and inconvenient. It is true, that when in any Court a defendant admits his

liability to a part of the demand which may be severed from the rest, as that he owes a certain sum of money, it is not unusual for the Court to order, that he pay the admitted sum into Court, and to proceed afterwards to deal with the disputed part of the plaintiff's demand.  We suppose it was upon that idea that the Judge acted in this case.  But the defendant disputes every part of the plaintiff's demand, he does not admit the plaintiff's right to the relief asked for, as to any part of the land; and he puts his denial upon grounds which if applicable to any part are equally applicable to the whole.  The contract charged is to convey land which is regarded as a single piece, to every part of which the defendant had or claimed the same right; and it seems to us the plaintiff's right to the relief claimed (so far as it relates to a conveyance of the defendant's estate) is as good or as bad as to the whole as to any part; and the defendant's right to resist the relief is the same as to every part of the land.  The decree is necessarily wrong as giving to the plaintiff either more or less than he was entitled to.  If the plaintiff is entitled to specific performance by a conveyance from the defendant, it is of his whole estate in the lands described in the contract.  The Court would afterwards inquire to what portion, if any, his title was defective; but that would be only for the purpose of ascertaining the value of that portion, and making a compensation to the plaintiff by a deduction from the purchase money.  The injury to the defendant is, that by this mode of proceeding he is deprived of his lien on the part which he is directed to convey, for the unpaid portion of the purchase money, and left for his security, only to that part which may be of comparatively little value, and to which the decree assumes that his title is, or may be, defective.  For these reasons we think the decree below must be reversed.

In considering the case as a whole, it will be seen that several important questions are presented.  Among them

there is one upon which we believe there is in our sister States some contrariety of decision.   1st.  Whether considering the peculiar but well settled principles on which a Court of Equity acts in decreeing a specific performance, it will do so, where Confederate money was the consideration on an executory contract to convey land, even when there has been a partial payment.   2d.  Whether it will do so, when there is any evidence tending to prove that the contract was conditional, e. g. as alleged in this case, upon the condition of the wife's consenting to join: although such condition does not appear in the contract.   There may be others to which it is unnecessary to allude.   Should we undertake to pass on these questions in the present state of the case, it might perhaps be a surprize on the parties, and we therefore forbear.

Judgment below reversed, and the case is sent back to the Superior Court of Alamance, for such further action as may be just.

PER CURIAM.                          Judgment reversed.